*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVON DONTRELL TERRY-OUTLAW,

        Defendant-Appellant.

UNPUBLISHED
August 31, 2023

No. 360457
Berrien Circuit Court
LC No. 2021-001489-FH

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] a trial court order denying defendant's motion to suppress evidence found pursuant to a traffic stop. On appeal, defendant argues that the trial court erred by denying his motion to suppress evidence found in violation of the constitutional prohibition against unreasonable searches and seizures.[2] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The facts in this case are largely not in dispute; what is in dispute are the legal implications arising from the facts.

In the early morning hours of May 13, 2021, Michigan State Police Trooper Shay Wresinski watched defendant stop at a stop sign and then aggressively accelerate through the intersection, exceeding the speed limit. The trooper initiated a traffic stop and found defendant in

---

[1] *People v Terry-Outlaw*, 986 NW2d 407 (Mich, 2023).

[2] US Const, Am IV; Const 1963, art 1, § 11.

the driver's seat of the vehicle with two additional occupants seated in the front passenger seat and the back seat.[3]

Trooper Wresinski asked defendant if any drugs, alcohol, or weapons were present in the vehicle. Defendant responded that there were none. The trooper walked back to his patrol car and conducted a Law Enforcement Information Network (LEIN) search, which indicated that defendant had an outstanding bench warrant for his arrest for failure to appear for assault charges. Trooper Wresinski detained defendant in front of his patrol vehicle. Defendant inquired if he could pay the trooper his bond, to which Trooper Wresinski stated he could not take payment for $20,000. Because the other occupants did not have valid driver's licenses, Trooper Wresinski told defendant that he planned to tow defendant's vehicle. Defendant called his mother and indicated at some point that his mother was on the way to the scene to pick up the car.

Trooper Wresinski asked for permission to search the car. Defendant declined consent. During this conversation, Trooper Wresinski smelled the odor of alcohol on defendant. Trooper Wresinski approached defendant's car and asked the other occupants to exit the vehicle. As the passengers got out, Trooper Wresinski saw an open container of alcohol in the rear passenger area. Trooper Wresinski conducted a search of the passenger compartment and found "several individually packaged baggies of marijuana" under the front passenger seat. Trooper Wresinski thought that the quantity of marijuana found was a legal amount to possess, however, based on his training and experience, Trooper Wresinski believed that the manner of packaging suggested an intent to distribute rather than an intent to use for personal consumption. Trooper Wresinski proceeded to search the trunk of the vehicle for additional alcohol or marijuana without a warrant. In the trunk he found a loaded, AR-style pistol. Shortly thereafter, defendant's mother arrived on the scene and took the vehicle. The county prosecutor charged defendant with carrying a concealed weapon, MCL 750.227, for the firearm seized from the trunk of the vehicle.

The trial court held an evidentiary hearing on defendant's motion to suppress evidence found in the car. Following the evidentiary hearing, the trial court denied defendant's motion to suppress evidence. Notably, the trial court relied on caselaw applying the automobile exception,[4]

---

[3] During oral argument defense counsel represented that there may have been four total occupants in the car.

[4] The trial court cited *Pennsylvania v Labron*, 518 US 938; 116 S Ct 2485; 135 L Ed 2d 1031 (1996), and *People v Moorman*, 331 Mich App 481; 952 NW2d 597 (2020). In *Labron*, the Supreme Court stated, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Labron*, 518 US at 940. In *Moorman*, this Court held that a search of a vehicle was lawful because the defendant's denial of the presence of marijuana combined with the marijuana odor smelled by police officer gave rise to probable cause that the defendant unlawfully possessed marijuana in a manner that was not consistent with the requirements of the Michigan Medical Marihuana Act. *Moorman*, 331 Mich App at 489.

but the trial court stated it denied the motion because "the search was valid incident to taking the defendant into custody on a valid warrant . . . ."

Defendant now appeals.[5]

## II. ANALYSIS

This Court reviews a trial court's factual findings in a suppression hearing for clear error. *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001). A finding of fact is clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2019). This Court reviews constitutional questions de novo. *People v Hughes*, 506 Mich 512, 522; 958 NW2d 98 (2020). Likewise, this Court reviews a trial court's ultimate ruling at a suppression hearing de novo. *People v Pagano*, 507 Mich 26, 31; 967 NW2d 590 (2021).

The Fourth Amendment of the United States Constitution guarantees to the people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." US Const, Am IV. The Michigan Constitution, Const 1963, art 1, § 11, generally provides the same protections as those secured by the Fourth Amendment. *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). Whether suppression of evidence seized through an unconstitutional search is appropriate in a given case pursuant to the exclusionary rule is a separate question from whether the constitutional prohibition against unreasonable searches and seizures was violated. *Hudson v Michigan*, 547 US 586, 591-592; 126 S Ct 2159; 165 L Ed 2d 56 (2006); *People v Goldston*, 470 Mich 523, 529, 538, 541; 682 NW2d 479 (2004).

The constitutionality of a search or seizure ultimately depends upon its reasonableness. See *Virginia v Moore*, 553 US 164, 171-172; 128 S Ct 1598; 170 L Ed 2d 559 (2008); *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). "Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions," and demonstrating that a search complied with the Fourth Amendment therefore requires the police to "show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Moorman*, 331 Mich App at 485. See also *Arizona v Gant*, 556 US 332, 338; 129 S Ct 1710; 173 L Ed 2d 485 (2009) (stating the "basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions") (quotation marks and citation omitted).

In this case, it is undisputed that the search of defendant's vehicle was conducted without a search warrant. The trial court found that the search was valid, apparently because an exception to the warrant requirement applied, but the precise exception on which the trial court relied is unclear from the record. As previously noted, the trial court relied on caselaw applying the automobile exception but nonetheless reasoned that "the search was valid incident to taking the defendant into custody on a valid warrant . . . ."

---

[5] The trial court stayed the proceedings in this matter pending resolution of this appeal.

On appeal, defendant asserts that the search was not permissible under a variety of theories. First, defendant maintains that he has "standing" to challenge the search in this case even though he was driving a rental car. As defendant notes, the United States Supreme Court has held that "as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." *Byrd v United States*, ___ US ___, ___; 138 S Ct 1518, 1524; 200 L Ed 2d 805 (2018).[6]

However, it does not appear that defendant's standing to challenge the search is contested. Moreover, the concept of "standing" in the Fourth Amendment context is not distinct from the merits of the alleged Fourth Amendment claim and is merely "a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search . . . ." *Byrd*, ___ US at ___; 138 S Ct at 1530. So-called Fourth Amendment standing is " 'more properly subsumed under substantive Fourth Amendment doctrine.' " *Id.*, quoting *Rakas v Illinois*, 439 US 128, 139; 99 S Ct 421; 58 L Ed 2d 387 (1978). See also *People v Mead*, 503 Mich 205, 213 n 2; 931 NW2d 557 (2019) ("[W]hether a defendant is 'entitled to contest the legality of a search and seizure . . . belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing . . . .' ") (quoting *Rakas*, 439 US at 140) (ellipses in original). "Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Byrd*, ___ US at ___; 138 S Ct at 1530.

Here, defendant argues that under *Byrd*, ___ US at ___; 138 S Ct at 1524, he had a reasonable expectation of privacy in the rental car that he was driving. However, the trial court never ruled that defendant lacked a reasonable expectation of privacy in the vehicle or that defendant lacked so-called Fourth Amendment standing. The trial court instead determined that the search was constitutional because an exception to the warrant requirement applied. *Moorman*, 331 Mich App at 485.

Hence, although defendant appears to be correct that he has Fourth Amendment standing, this argument does not demonstrate any basis on which we could grant him appellate relief. Thus, we now turn our attention to the exceptions to the warrant requirement.

Defendant is correct in arguing on appeal that the search did not fall within the search-incident-to-a-lawful-arrest exception.

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. [*Gant*, 556 US at 351.]

---

[6] Defendant in this case asserts that he was an authorized driver of the rental car.

Here, Trooper Wresinski testified that he detained defendant near the patrol vehicle after discovering that defendant had an outstanding bench warrant for failure to appear on assault charges. Subsequently, after Trooper Wresinski smelled the odor of alcohol emanating from defendant, asked the other occupants of defendant's vehicle to get out of the vehicle, and observed an open bottle of alcohol in the vehicle, Trooper Wresinski conducted a search of defendant's vehicle. There is no claim that defendant was within reaching distance of the passenger compartment of his vehicle while he was being detained near the patrol vehicle and there is no claim that the trooper believed defendant's vehicle somehow contained evidence related to the circumstances of the bench warrant for defendant's arrest. Accordingly, Trooper Wresinski's search of the defendant's vehicle could not be justified as a search incident to the arrest on defendant's bench warrant for failure to appear on assault charges. *Id*.

Defendant next argues that the search also was not a lawful inventory search. "[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v Bertine*, 479 US 367, 371; 107 S Ct 738; 93 L Ed 2d 739 (1987). A warrantless inventory search of an automobile may be considered "reasonable" for Fourth Amendment purposes because "inventory procedures serve to protect an owner's property *while it is in the custody of the police*, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id*. at 371-372 (emphasis added). As a general matter, routine procedures for "securing and inventorying" the contents of impounded vehicles have been developed in response to such concerns. *South Dakota v Opperman*, 428 US 364, 369; 96 S Ct 3092; 49 L Ed 2d 1000 (1976). The United States Supreme Court has "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *Id*. at 373. Police discretion is not prohibited in this context "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 US at 375.

In this case, however, there is no dispute that defendant's rental vehicle was not actually impounded by the police and that Trooper Wresinski released the vehicle to defendant's mother at the scene. The inventory search exception simply is not implicated under the factual circumstances presented in this case. *Id*. at 371-372; *Opperman*, 428 US at 369, 373.

However, the trial court also cited caselaw regarding the automobile exception to support its ruling, and it is the application of this exception that is the actual issue presented here.

The automobile exception is another well-established exception to the warrant requirement, under which "the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *People v Kazmierczak*, 461 Mich 411, 418-419; 605 NW2d 667 (2000). See also *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."). The ability to conduct a warrantless search of a vehicle pursuant to the automobile exception "extends to closed containers in the vehicle that might conceal the object of the search . . . ." *Kazmierczak*, 461 Mich at 422, citing *United States v Ross*, 456 US 798, 825; 102 S Ct 2157; 72 L Ed 2d 572 (1982). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 US at 825.

Probable cause exists when "there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417-418, 418 n 4 (citation omitted). Probable cause is determined by considering the "totality-of-the-circumstances" and making "a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). See also *Kazmierczak*, 461 Mich at 423 n 11 ("Probable cause is traditionally determined on the basis of the totality of the circumstances.") (citing *Gates*, 462 US at 238). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 US at 232.

Here, Trooper Wresinski asked defendant to get out of the rental vehicle so he could detain defendant pursuant to a bench warrant for his arrest. At some point, Trooper Wresinski smelled the odor of alcohol emanating from defendant. Despite defendant's prior denial regarding the presence of drugs, alcohol, or weapons in the car, Trooper Wresinski observed an open bottle of alcohol in plain view located in the passenger compartment of the car. Trooper Wresinski then conducted a search of the passenger compartment and found "several individually packaged baggies of marijuana" under the front passenger seat that appeared, based on his training and experience, to be packaged in a manner suggesting an intent to distribute. When Trooper Wresinski proceeded to search the trunk, he found the loaded firearm.

In *Moorman*, 331 Mich App at 483, this Court was presented with a factual scenario analogous to the factual circumstances of the present case. In that case, a trooper initiated a traffic stop for speeding. *Id*. at 483. Upon approaching the defendant's vehicle, the trooper detected a strong marijuana odor emanating from the vehicle, which he believed to be indicative of a large quantity of fresh marijuana. *Id*. The defendant initially denied the presence of marijuana in the car, but he later admitted that he had harvested marijuana that day and indicated that he had a valid medical marijuana caregiver card. *Id*. The trooper proceeded to search the car to verify that the quantity of marijuana that defendant possessed complied with the requirements of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. *Id*. at 483-484. The search revealed pills for which the defendant did not have a prescription. *Id*. at 484. This Court held that the warrantless search was constitutional pursuant to the automobile exception. *Id*. at 489-490. This Court reasoned as follows:

> [T]he activity [of possessing marijuana as a caregiver in a permitted area] was not inherently unprotected under the MMMA. But the analysis must then move to a second question: Did the trooper have probable cause to believe that the possession was unlawful because of the quantity involved? As a caregiver, defendant was allowed to possess a maximum amount of 2.5 ounces of marijuana per patient. MCL 333.26424(b)(1). Defendant made no statements indicating that he possessed marijuana over his limit. But we think that there exists an important fact that does give rise to probable cause to believe that defendant's possession was not in conformity with the MMMA.
>
> As noted earlier, defendant initially denied the presence of any marijuana in the vehicle. This claim was inconsistent with [Trooper] Park's testimony that he smelled the odor of fresh marijuana. Accordingly, under *Kazmierczak*, Park had

-6-

probable cause to believe that defendant did possess marijuana *and* that defendant lied about it. Furthermore, we believe that defendant's deception about the presence of marijuana in the vehicle would give rise to probable cause to believe that the amount possessed was greater than that permitted under the MMMA. That is, if defendant's possession was lawful, it is reasonable to believe that he would simply admit to marijuana being in the vehicle and produce his registry card to establish its lawfulness. But if a person, even with a registry card, misrepresents that he has no marijuana in his possession, then it is reasonable to believe that he is doing so because the amount he possesses is in excess of that permitted by the MMMA.

\* \* \*

. . . we conclude that defendant's behavior (denying the presence of marijuana) was inconsistent with being in lawful possession of marijuana under the MMMA. This behavior, in conjunction with the odor of marijuana, gave rise to probable cause to believe that defendant was in possession of marijuana in a manner not consistent with the protections of the MMMA. Accordingly, the search of the vehicle was lawful. [*Id*. at 487-489.]

Here, defendant denied the presence of any alcohol, drugs, or weapons in response to Trooper Wresinski's question near the beginning of the traffic stop. Yet, over the course of the traffic stop, Trooper Wresinski observed that defendant smelled like alcohol and Trooper Wresinski observed an open bottle of alcohol in the passenger compartment of the vehicle when he ordered the other occupants out of the vehicle.[7] It is a misdemeanor for an operator or occupant to transport alcohol in an open container in the passenger compartment of a vehicle. MCL 257.624a(1) and (3). Under the totality of the circumstances, considering the smell of alcohol coming from defendant, the open alcohol container in the passenger compartment of the vehicle, and defendant's deceptive response to Trooper Wresinski's question about the presence of alcohol, Trooper Wresinski had probable cause at that point to search the vehicle for more open alcohol containers as evidence of criminal conduct. See *id*.; *Gates*, 462 US at 238. Pursuant to the automobile exception, the police could thus conduct a warrantless search of "every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 US at 825. See also *Kazmierczak*, 461 Mich at 418-419, 422.

Next, as Trooper Wresinski searched the passenger compartment of the vehicle, he discovered individual baggies of marijuana under the front passenger seat. He testified that based on his training and experience, the manner of packaging indicated an intent to distribute the marijuana rather than consume it for personal use. Trooper Wresinski believed that the amount of marijuana located in the passenger compartment of the vehicle was a legal amount to possess. However, defendant had previously denied the existence of any drugs in the vehicle. Trooper Wresinski testified that he proceeded to search the trunk of the vehicle to look for additional

---

[7] Defendant conceded at oral argument that the open bottle of alcohol was in plain view.

containers of alcohol and additional marijuana that would exceed the legal limit for marijuana possession or that was packaged in a manner indicating an intent to distribute.

Defendant contends on appeal that Trooper Wresinski did not have any grounds to search defendant's vehicle based on his possession of marijuana. Although the precise contours of defendant's argument are somewhat difficult to follow, it appears that defendant argues that allowing his marijuana possession to justify the warrantless search contravenes Michigan public policy because the Michigan Regulation and Taxation of Marihuana[8] Act (MRTMA), MCL 333.27951 *et seq.*, has made it legal for persons over the age of 21 to possesses marijuana within prescribed limits.

However, as defendant seems to at least tacitly acknowledge, the MRTMA did not somehow legalize *all* conduct involving marijuana in Michigan. In very general terms, and as relevant to the facts presented in this case, it is not unlawful under the MRTMA for a person "21 years of age or older" to possess or transport "2.5 ounces or less of marihuana" outside of the person's residence. MCL 333.27955(1)(a). Furthermore, it is not unlawful for a person 21 years of age or older to "giv[e] away or otherwise transfer[] without remuneration up to 2.5 ounces of marihuana, except that not more than 15 grams of marihuana may be in the form of marihuana concentrate, to a person 21 years of age or older, as long as the transfer is not advertised or promoted to the public." MCL 333.27955(1)(d). The statute provides that these lawful acts "are not an offense, are not grounds for seizing or forfeiting property, are not grounds for arrest, prosecution, or penalty in any manner, are not grounds for search or inspection, and are not grounds to deny any other right or privilege[.]" MCL 333.27955(1).

Nonetheless, while legalizing certain marijuana related conduct, the MRTMA also expressly prohibits certain specific conduct involving marijuana. As relevant here, in addition to the frequently referenced purpose of the MRTMA to "make marihuana legal under state and local law for adults 21 years of age or older," the other expressly stated purposes of the MRTMA include "control[ing] the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved"; "remov[ing] the commercial production and distribution of marihuana from the illicit market; prevent[ing] revenue generated from commerce in marihuana from going to criminal enterprises or gangs;" and "prevent[ing] the diversion of marihuana to illicit markets[.]" MCL 333.27952. Furthermore, certain acts involving marijuana are expressly not authorized under the MRTMA, including:

> (a) operating, navigating, or being in physical control of any motor vehicle, aircraft, snowmobile, off-road recreational vehicle, or motorboat while under the influence of marihuana;

> (b) transfer of marihuana or marihuana accessories to a person under the age of 21;

---

[8] Throughout this opinion, we use the more common spelling, "marijuana," except when quoting statutory language.

(e) consuming marihuana in a public place . . .

* * *

(g) consuming marihuana while operating, navigating, or being in physical control of any motor vehicle, aircraft, snowmobile, off-road recreational vehicle, or motorboat, or smoking marihuana within the passenger area of a vehicle upon a public way . . . . [MCL 333.27954(1).]

Certain violations of the MRTMA are considered civil infractions, but others are expressly denoted misdemeanors. See generally MCL 333.27965. Misdemeanors are crimes. See generally MCL 750.5; MCL 750.6; MCL 750.8; see also *People v Hanrahan*, 75 Mich 611, 619-620; 42 NW 1124 (1889) ("The word 'crime' is applicable to both a felony and 'misdemeanor.' So the words 'offense' and 'crime' are synonymous, when applied to convictions for violations of statutes of a public nature. . . . The words are used interchangeably in our compilations. Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture, or imprisonment, he commits a crime.").

Of particular relevance in the instant case is MCL 333.27965(4), which provides as follows:

Except for a person who engaged in conduct described in section 4 [MCL 333.27954], a person who possesses more than twice the amount of marihuana allowed by section 5 [MCL 333.27955], cultivates more than twice the amount of marihuana allowed by section 5, or delivers without receiving any remuneration to a person who is at least 21 years of age more than twice the amount of marihuana allowed by section 5, shall be responsible for a misdemeanor, but shall not be subject to imprisonment unless the violation was habitual, willful, and for a commercial purpose or the violation involved violence.

Furthermore, transferring marijuana for remuneration is *not* authorized under the MRTMA, MCL 333.27955(1)(d), and possession with intent to deliver marijuana is a felony. MCL 333.7401(2)(d). "The legality of a person's possession, by itself, is irrelevant to the crime of possession with intent to deliver a controlled substance." *People v Robar*, 321 Mich App 106, 122; 910 NW2d 328 (2017). The offense of possession with intent to deliver a controlled substance "is aimed at preventing a person from possessing a controlled substance *with unlawful intent* regardless of whether the possession would otherwise be lawful absent this intent." *Id*. at 126. The unlawful intent in this context is the intent to unlawfully deliver the substance, *id*., and more specifically with respect to marijuana, to deliver for remuneration, MCL 333.27955(1)(d). "Intent to deliver may be inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Robar*, 321 Mich App at 126 (quotation marks and citation omitted).

The point of the foregoing discussion is, as we have previously recognized, that "analysis of search-and-seizure law is now much more complicated and nuanced than it was when marijuana was unlawful in all circumstances in Michigan." *People v Armstrong*, ___ Mich App ___, ___;

___ NW2d ___ (2022); slip op at 5, citing Arnold, *Criminal Law Issues After Passage of the MRTMA: Uncertainty Remains*, 100 Mich B J 26, 29-30 (June 2021).[9]

Here, the discovery of individual baggies of marijuana packaged in a manner suggesting an intent to sell on the illicit market, combined with defendant's previous untruthful denial about the existence of drugs in the vehicle, supported a conclusion that there was probable cause to believe that defendant was engaged in criminal activity involving marijuana—such as an intent to unlawfully deliver as well as the potential for possessing more than the permissible quantity of marijuana—and that additional evidence of that conduct could be located in the vehicle, including the trunk where the firearm was ultimately found.[10] If defendant's possession and intent had been lawful, it is reasonable to believe that he would simply have admitted to marijuana being in the vehicle. See *Moorman*, 331 Mich App at 488. Accordingly, the continuing search was supported by probable cause and could be conducted without a warrant pursuant to the automobile exception. *Ross*, 456 US at 825; *Moorman*, 331 Mich App at 487-490.

Defendant's additional arguments on appeal are somewhat confusing and do not seem to directly focus on the application of the automobile exception. Defendant argues that the discovery of the open alcohol bottle in the passenger compartment of the vehicle did not give Trooper Wresinski probable cause to search the trunk of the vehicle because open containers of alcohol may lawfully be transported in the trunk of a vehicle pursuant to MCL 257.624a and the trunk therefore could not contain illegal open containers of alcohol, which were the only objects of the search at that point, see *Ross*, 456 US at 825. However, we need not resolve this question because assuming without deciding that defendant is correct, Trooper Wresinski began by only searching the passenger compartment of the vehicle after discovering the open bottle of alcohol and he

---

[9] In this article, Arnold discusses many of the unsettled questions surrounding the application of the MRTMA. We need not settle these many questions in this opinion because they are not presently before us. In this case, as fully explained within this opinion, we merely decide that there was probable cause, under these facts and circumstances, supporting a conclusion that at the time of the search, police had probable cause to determine if defendant was engaged in conduct involving marijuana that remains illegal.

[10] Although defendant argues that it is permissible to transport marijuana in the trunk of a vehicle under MCL 750.474, that does not negate that there was probable cause to believe that defendant had an unlawful amount of marijuana or possessed marijuana with the intent to unlawfully deliver it, nor does it negate that unlawful marijuana could be in the trunk. The concern justifying the search was not the mere location of the marijuana. The fact that innocent explanations may be imagined does not render an officer's actions automatically unreasonable. See *People v Williams*, 472 Mich 308, 317 n 14; 696 NW2d 636 (2005) ("The Court of Appeals stated that there were 'plausible' innocent explanations for the statements made by the vehicle occupants. But the fact that such explanations can be imagined does not mean that Trooper Varoni acted unreasonably in seeking to resolve the inconsistencies."). Furthermore, to the extent Trooper Wresinski justified the basis for his search somewhat differently, that does not change our conclusion because "the Fourth Amendment creates an objective, not subjective, standard." *Moorman*, 331 Mich App at 489 n 2.

discovered marijuana, which in turn provided probable cause to search the trunk for additional marijuana under the totality of the circumstances as we have already discussed.[11]

Defendant also appears to argue that the trooper unreasonably prolonged the length of the stop when he ordered the passengers out of the vehicle and that if he had not taken this allegedly unreasonable step, he would not have discovered the open alcohol container that led him to subsequently discover the marijuana and firearm as he searched the vehicle. Defendant includes a single paragraph in his appellate brief asserting this argument, and he pressed this contention during oral argument. However, this issue was not raised in defendant's application for leave to appeal to the Supreme Court and is not properly before this Court. See MCR 7.205(E)(4) ("Unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief."); *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003) (stating that this Court may decline to consider an argument not in the question presented).

Moreover, even if we were to consider defendant's argument, he has failed to sufficiently develop the argument and support it with legal authority. Relying solely on *Rodriguez v United States*, 575 US 348; 135 S Ct 1609; 191 L Ed 2d 492 (2015), defendant merely asserts that "[a]sking the passenger to depart the vehicle at nearly the end of the traffic stop unnecessarily prolonged the traffic stop beyond its original purpose and became an unreasonable search and seizure." In *Rodriguez*, the United States Supreme Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," and a "seizure justified only by a police-observed traffic violation, therefore, become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id*. at 350-351 (quotation marks and citation omitted; alterations in original).

However, an officer conducting a traffic stop generally, "as a matter of course," may "order passengers to get out of the car pending completion of the stop" without running afoul of the Fourth Amendment. *Maryland v Wilson*, 519 US 408, 410, 415; 117 S Ct 882; 137 L Ed 2d 41 (1997). Furthermore, "[t]he determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which the officer is faced" and "when a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005).

Here, there was evidence that defendant had been arrested on his bench warrant and that Trooper Wresinski was planning to impound the vehicle when he ordered the passengers to get out of defendant's vehicle. On appeal, defendant fails to offer any cogent explanation how, in light of this well-established legal authority and the *complete* picture of evolving circumstances that Trooper Wresinski faced (including that the passengers would have to get out for the vehicle to be impounded), the length of the stop could be considered unreasonable. In fact, the stop was prolonged as a favor to defendant so that his mother, rather than a tow truck, could take control of

---

[11] As we have already noted, to the extent Trooper Wresinski may have explained his reasons justifying the warrantless search somewhat differently, this does not change our analysis because we analyze Fourth Amendment claims under an objective, rather than subjective, standard. *Moorman*, 331 Mich App at 489 n 2.

the vehicle. Additionally, "an appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).

Furthermore, defendant additionally asserts that Trooper Wresinski was prohibited from asking about the presence of marijuana at the outset of the traffic stop because it unreasonably prolonged the traffic stop. As an initial matter, defendant's argument essentially relies on the misconception that all conduct involving marijuana is inherently legal for people over 21 in Michigan; we have already explained why that belief is unfounded. Moreover, during a traffic stop, it "is no violation of the Fourth Amendment for an officer to ask reasonable questions in order to obtain additional information about the underlying offense and the circumstances leading to its commission." *Williams*, 472 Mich at 316. A police officer has "considerable discretion" in "enforcing the traffic laws." *Id*. at 315 n 8. "Simply put, the Fourth Amendment does not impose a 'one size fits all' rule of police investigation, much less one that restricts the officer to informing the driver of the nature of the infraction, and subsequently obtaining the information necessary to fill out a citation." *Id*. at 316-317 (citation omitted). "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v Johnson*, 555 US 323, 333; 129 S Ct 781; 172 L Ed 2d 694 (2009).

Here, Trooper Wresinski's single question about the presence of drugs asked near the beginning of the stop did not *measurably* extend the duration of the stop. Defendant thus has not demonstrated any basis on which we could conclude that this constituted an unconstitutional seizure. *Id*.; cf also *Pennsylvania v Mimms*, 434 US 106, 111; 98 S Ct 330; 54 L Ed 2d 331 (1977) (holding that ordering the driver of a lawfully stopped vehicle to get out of the vehicle during a traffic stop constitutes only a "*de minimus*" intrusion into the driver's personal liberty).

Next, to the extent defendant seemingly argues that Trooper Wresinski's actions were a pretext for his pre-existing desire to search the vehicle, the United States Supreme Court has made it clear that an officer's "subjective intentions" and "actual motivations" do not play any "role in ordinary, probable-cause Fourth Amendment analysis." *Whren v United States*, 517 US 806, 813; 116 S Ct 1769; 135 L Ed 2d 89 (1996). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id*. (quotation marks and citation omitted). The officer's "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional." *Id*. (quotation marks and citation omitted; alteration and ellipsis in original). Moreover, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id*. at 814. In this context, our analysis must focus on "the objective facts relating to the traffic stop" and the "officer's subjective state of mind is not relevant . . . ." *Williams*, 472 Mich at 314 n 7. Defendant's arguments regarding pretext are thus entirely without merit.

Finally, defendant argues that our decision in *Moorman* was superseded by the MRTMA. In *Armstrong*, this Court explained that passage of the MRTMA superseded otherwise-binding precedent that the smell of marijuana alone provided probable cause to search for marijuana.

-12-

*Armstrong*, ___ at ___; slip op at 6. However, this Court's decision in *Armstrong* did not negate the reasoning underpinning *Moorman*. In fact, this Court in *Armstrong* expressly explained that the warrantless search in *Moorman* was justified by "the smell of marijuana *combined with* the defendant lying about his legal possession . . . ." *Id*. at 5. Citing *Moorman* with approval, as well as decisions from other jurisdictions, the panel in *Armstrong* held that the smell of marijuana is one of many relevant factors in the totality-of-the-circumstances determination whether probable cause exists to conduct a warrantless search of a vehicle or seize an occupant of the vehicle, but "the smell of marijuana, by itself, does not give rise to probable cause unless it is combined with other factors that bolster the concern about illegal activity that may flow from the smell of marijuana." *Id*. at ___; slip op at 6-7. Our analysis in the instant case is entirely consistent with our holding in *Armstrong*.

Affirmed.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-13-